## 10061

### HENDERSON v. LYDIA COTTON MILLS *ET AL.*

(96 S. E. 539.)

1. EVIDENCE—ADMISSIBILITY—TESTIMONY AT FORMER TRIAL.—Upon second trial, on showing of the sheriff's diligent search for two witnesses who testified at the first trial, without finding them, and testimony of plaintiff's father that he had made diligent search and learned that they had gone to another State, plaintiff was properly permitted to read in evidence their testimony taken by the stenographer at the former trial.

2. EVIDENCE—OPINIONS—INFERENCES.—In action for assault by factory foreman, coworkers of plaintiff could not testify that, being present, they failed to see and hear what was going on, and that, if there had been an assault, they would have known of it, basing such conclusion upon the fact that anything unusual occurring in the factory is soon known by all the workers; this being an inference within the province of the jury.

3. NEW TRIAL—CONDUCT OF COUNSEL—INFLUENCING JURY.—While it was improper for plaintiff's attorney to invite a group of which a juror was a member to partake of refreshment at the attorney's expense, such conduct did not require a new trial, where the juror testified that he did not think of such transaction as affecting his verdict, and the attorney stated that he did not at the time of the invitation recall that the juror in the crowd was a juror, and no prejudice could have resulted.

Before PEURIFOY, J., Laurens, Spring term, 1917. Affirmed.

Action by Willie Lee Henderson, by G. M. Henderson, her guardian *ad litem,* against the Lydia Cotton Mills and another. Judgment for plaintiff, and defendants appeal.

*Messrs. Richey & Richey* and *F. P. McGowan,* for appellants, cite: *As to admission in evidence the stenographer's transcript of the testimony of two witnesses taken at a former trial:* 29 S. C. 303. *As to exclusion of opinion evidence:* 19 S. C. 70; 57 S. C. 446. *As to refusal of motion to set aside verdict and grant a new trial:* Civil Code, vol. I, sec. 3831, sec. 4049; 75 S. C. 177; 28 Texas 405; 38 Cyc. 1286.

*Messrs. Blackwell & Sullivan,* and *Featherstone & Knight,* for respondent, cite: *As to admission in evidence the testimony of witnesses taken at a former trial:* Jones on Evidence, sec. 341; Greenleaf on Evidence, vol. I, p. 163; also sec. 163; 91 A. S. R. 195-196; 169 Pa. 510; Greenleaf on Evidence 203; 120 Mich. 422; 191 A. S. R. 204; 44 S. A. R. (Ga.) 145; 80 S. E. 679; 82 S. E. 543; 10 R. C. L. 966-977-969; 93 G. A. 369; 44 A. S. R. 145; 2d Wigmore, sec. 1405. *As to opinion evidence:* 94 S. C. 405; 81 S. C. 193.

July 27, 1918.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This is an action for damages for an assault and battery, alleged to have been committed upon plaintiff, a girl 16 years of age, by the defendant, Smith, while plaintiff was employed as an operative in the defendant cotton mill; 'Smith being her overseer. Defendants denied the allegation. The testimony was conflicting. Plaintiff and three of her witnesses testified that Smith kicked her and cursed and abused her about her work. Smith swore that he did not touch her, and that nothing happened between them, except that she asked his permission to go downstairs to get a drink of water, that he gave her permission to go, that she went, and did not come back to her work. Defendants sought to discredit plaintiff and her witnesses. The issue was one of fact, depending entirely upon the veracity of the witnesses as determined by the jury. The verdict was for plaintiff for $2,000, and from judgment thereon defendants appealed.

There were two trials of the case, the first resulting in a mistrial. At the second trial two of plaintiff's witnesses were absent. A subpœna writ had been duly issued for them, and the sheriff made return thereon that he made diligent search for them and could not find them, and that he had been informed that they had left the State a short time before the trial, and had gone to the State of North Carolina. Plaintiff's father testified that he, too, had made diligent search for them, and had been informed that they had gone to North Carolina. Upon that showing, the Court allowed plaintiff to read their testimony, as taken by the stenographer at the former trial. In this there was no error.

The testimony on behalf of defendants was largely of a negative character; that is, they proved by a number of operatives that they were at work in the room where the assault was alleged to have been committed, and could have seen it, if it had been committed, but that they did not see any assault committed upon plaintiff, and did not hear of

it, until after the action was brought. The room was about 60x100 feet, and was filled with spinning frames, which were a little higher than the heads of the witnesses, and were placed in rows, with alleys or walkways between them. One of the witnesses said she worked at one end of the room and plaintiff at the other end, and the other said that plaintiff's work was six alleys from her. Both testified that they did not see Smith strike or maltreat the plaintiff and did not hear of it until a few days before the first trial. One of them said that he might have done so without her being able to see it, on account of the spinning frames being between them. The other said that, if he had done so, she could have seen it. They were asked by defendant's attorneys whether they would have known of it, if Smith had struck plaintiff, and they replied that they certainly would. On cross-examination, they were asked how they would have known it, and they replied that some one would have seen it and told it; that, when anything unusual happens in the mill, the help know it.

On motion of plaintiff's attorneys the Court struck out that part of their testimony as incompetent, and the ruling is the basis of the second and third exceptions. The ruling was clearly right. The testimony does not come within the rule under which a witness may, under some circumstances, give his opinion, after stating the facts upon which it is predicated. The opinion or belief sought to be elicited from these witnesses was not based upon facts within their knowledge and testified to by them, but upon the probability or possibility of some one else seeing and knowing the fact and telling them about it. What was sought to be gotten from them was merely an inference, which it was the province of the jury to draw, or not, as they viewed the circumstances.

Defendants moved for a new trial on the ground of improper conduct of plaintiff's attorneys with one of the

jurors during the progress of the trial. The affidavits show that one morning during the trial, and before the convening of the Court, Mr. Featherstone, one of plaintiff's attorneys, went to a drug store near the courthouse to get a cold drink at a soda fountain, and, finding some four or five gentlemen, who were all his personal friends, standing in front of the store engaged in conversation, he spoke to them, and stated that he was just going into the store to take a cold drink, and invited them to join him, which they all did. In the number was Mr. Blackwell, another of plaintiff's attorneys, and Mr. Spoon, one of the jurors. The case on trial was not mentioned. Mr. Featherstone made affidavit that he extended the invitation as one of the usual and ordinary civilities between gentlemen and friends on such meetings, without thinking of the case on trial, and, of course, without intending to influence the juror, and that, at the time, he was scarcely conscious of the fact that Mr. Spoon was a juror; and Mr. Spoon, who was shown to be a man of intelligence and of unquestioned integrity of character, made affidavit that he accepted the invitation in the spirit in which it was extended without thinking that it involved any impropriety, that it had no influence whatever upon his consideration of the case, that he thought nothing of it at the time, nor afterwards, until it was brought to his attention by the motion for a new trial. The Circuit Court refused the motion, finding and holding that the high character of the gentleman referred to negatives the suggestion that they would intentionally do anything improper or unprofessional, that the case was not mentioned or referred to by either of the attorneys or the juror, that the jury as a whole was an unusually intelligent one, and that he was satisfied that the parties had had a fair and impartial trial.

It is scarcely necessary to say that the administration of justice should be conducted with that degree of circumspection which will put it above even the suspicion of improper influences. Therefore the attorneys and jurors engaged in

the trial of a cause should be careful to avoid even the appearance of doing wrong. It is improper for the parties, or their agents or attorneys, to be treating jurors or extending to them any marked attentions immediately before or during the trial of causes in which they are interested. We have not the least doubt that the gentlemen who thoughtlessly fell into the impropriety here complained of were entirely innocent of any wrongful purpose, and we are satisfied that defendants were not prejudiced by it. Therefore we agree with the Circuit Court that, as the incident was fully and satisfactorily explained, and as it was made to appear that defendants were not prejudiced by it, it did not afford sufficient ground to set aside the verdict. With respect to reviewing the exercise of discretion by a Circuit Judge with regard to a matter of this sort, this Court said, in *McGill v. Railway,* 75 S. C. 177, 55 S. E. 216:

"In the first place, the reasons for refusing to interfere with the discretion of a Circuit Judge in matters involving the purity of the jury box and the integrity of verdicts are peculiarly strong. He is in the atmosphere of the trial, and has opportunity to estimate the character and intelligence of the jurors, as well as of the person charged with improper conversation or corrupt dealings with them. He has opportunity also to consider the verdict in the light of the evidence and the sources from which the evidence comes, and determine whether the verdict has so little support as to indicate corrupt or improper influence. These and perhaps other things afford the trial Judge such superior means of coming to a just conclusion that, before disturbing his order on such a subject, an appellate Court should require very clear evidence of abuse of discretion."

Judgment affirmed.